No. 89-223

IN THE SUPREME COURT OF THE STATE OF MONTANA

1989

LARRY GAY,

Plaintiff and Appellant,

-vs-

CABINET PUBLISHING, INC.,

Defendant and Respondent.

APPEAL FROM: District Court of the Nineteenth Judicial District,
In and for the County of Lincoln,
The Honorable Robert S. Keller, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Richard R. Buley; Tipp, Frizzell & Buley, Missoula,
Montana

For Respondent:

L. Charles Evans, Libby, Montana

Submitted on Briefs: Aug. 10, 1989

Decided: September 14, 1989

Filed:

Clerk

Justice John Conway Harrison delivered the Opinion of the Court.

Larry Gay (Gay) initiated this action to recover proceeds from sale of equipment respondent Cabinet Publishing, Inc. (Cabinet) allegedly sold in violation of Article 9 of the Uniform Commercial Code. Following a bench trial, the District Court of the Nineteenth Judicial District, Lincoln County, entered judgment for Cabinet ruling that the transaction between Gay and Cabinet was a true lease and not subject to Article 9. From that judgment, Gay appeals. We affirm.

Appellant raises two issues for review.

1. Did the District Court err in determining that the lease agreement between Gay and Cabinet was a true lease and not a secured transaction?

2. Did the sale of the equipment conform to the requirements of the U.C.C.?

On April 2, 1979, Summit County Sentinel Corporation, owned by William C. King and Clara C. King, purchased Western Montana Publishing Company (Western) from Paul and Iris Verdon. Western ran the weekly newspaper in Libby, Montana called the Western News. The Verdons retained a perfected security interest in all the business' printing equipment.

Sometime in 1979, Gay and Rodney Johansen started a newspaper called Bargain Express, which competed with the Western News. After a period of stiff competition, Gay and Johansen agreed to sell the Bargain Express to Western. On December 18, 1980, the parties executed a contract whereby Western agreed to give up the job printing and office supply business and assign such rights, including most of the Lincoln County printing contract, to Gay and Johansen. As

2

part of the contract, Western transferred to Gay and Johansen certain inventory and equipment not subject to the Verdons' security interest.

Additionally, the contract provided that Western would lease to Gay and Johansen the equipment that was subject to the Verdons' security interest. The lease was to run until May 1, 1994 at which time Western's indebtedness to the Verdons would be satisfied. At that time, Gay and Johansen would have an option to purchase the equipment for $50. As consideration for the lease, Gay and Johansen agreed to pay the taxes on the equipment, insure it against theft and damage and keep it in good repair. If Gay and Johansen failed to perform their obligations, then the contract provided for a five-day default period after which time Western could repossess the equipment if the default was not cured. The contract expressly stated that the leased equipment was subject to Verdons' security interest. At the time of the contract, Gay and Johansen also entered into a side agreement with Western in which they agreed not to move the leased equipment without written permission of the Verdons. This agreement was in writing and sent to the Verdons.

Cabinet, owned by Mark and June McMahon, purchased Summit's interest in Western on August 27, 1981. Cabinet assumed Western's purchase and lease agreement with Gay and Johansen.

Between September, 1981 and September, 1982, Gay and Johansen encountered numerous difficulties. They were arrested and convicted on federal counterfeiting charges and had to serve almost three months in prison beginning February 1, 1982. On November 2, 1981, they were served with an

eviction notice at their Express Press location. On January 8, 1982, Gay moved all the printing equipment from the Express Press building into storage. Also during this time, United Bank obtained a judgment against Gay and Johansen on defaulted loans and seized and sold whatever assets it could.

On July 2, 1982, Cabinet served a Notice of Default on Gay in connection with the leased equipment. Gay did not pay the taxes on the equipment for either 1981 or 1982. Gay failed to insure the equipment against theft at any time and what insurance had been on the equipment had expired in the fall of 1981. Also the equipment was not in good repair. Gay and Johansen did not correct the default within the five-day period.

As to the repossessed equipment, Cabinet and the Verdons agreed that the equipment should be sold and the proceeds applied to the Verdon debt. Cabinet subsequently had the repossessed equipment appraised by a Mr. Buckner, a licensed broker from Spokane, Washington. Some of the equipment was then sold to a Ray Denning at its fair market value as determined by Buckner. Buckner sold the remainder at fair market value to third parties. The proceeds were then applied to the Verdon obligation as agreed.

I.

Did the District Court err in determining that the lease agreement was a true lease and not a secured transaction? Due to our holding on issue two, we need not discuss this issue. The evidence shows a valid sale.

4

II.

Did the sale of the equipment conform to the requirements of the U.C.C.?

Section 30-9-504, MCA, sets forth both the secured party's right to dispose of collateral after default and a scheme of priorities for distributing the proceeds. Under § 30-9-504, MCA, the secured party may sell the collateral in any commercially reasonable manner. The proceeds must then be distributed in the following order: (1) to the expenses of the sale; (2) to satisfy the indebtedness secured by the security interest under which the disposition is made; and (3) to satisfy any subordinate security interest if certain requirements are met. The secured party must account to the debtor for any surplus. Additionally, the U.C.C. requires the secured party to notify the debtor of the time and manner of sale.

Appellant contends that respondent violated § 30-9-504, MCA, because respondent failed to give him proper notice of sale and failed to account for the surplus proceeds of the sale.

The status of the parties in relation to the equipment is not in dispute. Verdons and respondent are secured parties with Verdons' security interest being superior to respondent's. Appellant is the debtor-in-default. Also, no dispute exists that both secured parties, Verdons and respondent, planned that a sale should take place and that the proceeds should be applied to the Verdon indebtedness. Because of this plan, in effect both secured parties disposed of the equipment and the proceeds were then applied to satisfy the "indebtedness secured by the security interest under which the disposition is made." Section 30-9-504(1)(b), MCA. The distribution of the sale proceeds

5

conformed to the requirements of § 30-9-504, MCA. No surplus proceeds remained to distribute to appellant.

Appellant also asserts summarily that respondent did not give him proper notice of the time and manner of sale. However, appellant failed to give this Court any arguments or any references to the record in support of his assertion. We reject appellant's contention.

This Court affirms correct District Court decisions. We affirm the District Court.

Justice

We concur:

Justices